UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Case No. 1:13-CV-22005-UU

SUNSET CONCEPTS I.P. FIRM, LLC,

      *Plaintiff*,

v.

DISCOVERY COMMUNICATIONS, INC.,

      *Defendant.*

**DEFENDANT DISCOVERY COMMUNICATIONS, INC.'S MOTION TO DISMISS
COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

**CARLTON FIELDS, P.A.**
Charles M. Rosenberg
  Florida Bar No. 279064
  crosenberg@carltonfields.com
Naomi M. Berry
  Florida Bar No. 0069916
  nberry@carltonfields.com
100 S.E. Second Street, Suite 4200
Miami, FL 33131
Tel.: (305) 530-0050
Fax: (305) 530-0055

**DAVIS WRIGHT TREMAINE LLP**
Laura R. Handman (*pro hac* pending)
  laurahandman@dwt.com
Constance M. Pendleton (*pro hac* pending)
  conniependleton@dwt.com
Lisa B. Zycherman (*pro hac* pending)
  lisazycherman@dwt.com
1919 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
Tel.: (202) 973-4200
Fax: (202) 973-4499

*Counsel for Defendant Discovery Communications, Inc.*

Defendant Discovery Communications, Inc. ("Discovery"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, requests the Court to dismiss, with prejudice, the Complaint filed by Sunset Concepts I.P. Firm, LLC, and its principal, Susan Kasi (collectively "Sunset" or "Plaintiff").

## I.     PRELIMINARY STATEMENT

This theft-of-ideas suit arises from what Plaintiff characterizes as a "String of Coincidences" demonstrating that Discovery misappropriated Sunset's "unique ideas" for a new television network and related programming.  (Compl. 7, ¶ 89.)  The ideas Plaintiff claims as its own are premised, Plaintiff admits, on Oprah Winfrey's brand and employ well-trod themes of "transformative, experiential and therapeutic television programming" and "footage of beautiful and inspiring places, guided imagery, meditation, music, art and philosophy."  (*Id*. ¶¶ 9-10, 13, 34.)  Plaintiff acknowledges, as it must, that Ms. Winfrey has long-established her brand in television programming ("The Oprah Winfrey Show"), television and film production (Harpo Productions, Inc.), network television (Oxygen), and print media (*O, The Oprah Magazine*). Nevertheless, Plaintiff claims that Sunset was injured when Discovery, having turned down Plaintiff's concept, years later launched the Oprah Winfrey Network ("OWN"), a joint venture with Harpo Productions.

Instead of notifying Discovery of Sunset's theft-of-ideas claim when Discovery and Harpo Productions publicly announced the formation of OWN in January 2008, Plaintiff sat on its claims for a significant amount of time, waiting over five years until the new network was successful to file suit.  Plaintiff's "String of Coincidences" quickly unravels because Sunset's allegations fail – on their face – to establish any cognizable cause of action against Discovery. As a result, Plaintiff's claims must be dismissed as a matter of law on the following separate, but related, grounds:

*First*, Plaintiff's claims are time-barred under both Florida and Maryland's statutes of limitations.  Even if Sunset's claims were not time-barred, *second*, Plaintiff fails to state a claim for breach of contract as a matter of law because the Confidentiality Agreement expired long before Discovery entered into the joint venture to launch OWN.  *Third*, the Confidentiality Agreement is explicit and controlling and precludes any claim for breach of the implied covenant of good faith and fair dealing.  *Fourth*, Plaintiff fails to state a claim for misappropriation of ideas because Plaintiff cannot plausibly plead that Sunset's ideas – which are, on their face, either generic or premised on Oprah Winfrey's brand – are novel, or that Discovery adopted and used Sunset's "unique ideas."  Because these claims are not only a failure of pleading, but also fail as a matter of law, any amendment would be futile.  Accordingly, the Complaint should be dismissed in its entirety with prejudice.  *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010).

## II.      FACTUAL BACKGROUND

### A.      The Oprah Winfrey Network

In January 2008, Discovery announced a joint venture with Oprah Winfrey's production company, Harpo Productions, Inc., to launch OWN.  (Compl. ¶ 33.)  OWN began airing programming on January 1, 2011.  (*Id.* ¶ 42.)  OWN employs several network slogans, including "We take you there" (*id.* ¶ 51) and "celebrate life" (*id.* ¶ 52), which reflect Oprah Winfrey's multi-media slogans encouraging her audience to "Live your Best Life."[1]

---

[1] *See, e.g.,* "Live Your Best Life" seminars, http://www.oprah.com/omagazine/Live-Your-Best-Life-Every-Day (last visited July 11, 2013); "Life Your Best Life" Newsletter, http://www.oprah.com/omagazine/Sign-Up-for-Oprahcoms-Live-Your-Best-Life-Newsletter (last visited July 11, 2013); Press Release, "Oprah Winfrey and Discovery Communications to Form New Joint Venture: OWN: The Oprah Winfrey Network" (Jan. 15, 2008), http://www.oprah.com/pressroom/Oprah-and-Discovery-Communications-Announce-OWN-The-Oprah-W ("OWN's mission is to create multiple platforms . . . to celebrate life, to inspire and entertain, empowering viewers . . . to live their best lives . . . .").

Naturally, many of OWN's programs draw directly from Oprah Winfrey's brand.  For example, "Super Soul Sunday," a block of programming "billed as featuring a mix of 'art, culture, science, philosophy and spirituality'" (*id.* ¶ 56), includes a segment called "Breathing Space" (*id.* ¶ 63) that bears the same name and concept as a recurring feature in *O, The Oprah Magazine* ("*O Magazine*").  (*Id.* ¶ 59.)  Super Soul Sunday also includes segments "inviting viewers to submit photographs of their favorite places" (*id.* ¶ 68), inviting viewers to dance (*id.* ¶ 72), and "interviewing people about the good news in their lives."  (*Id.* ¶ 74.)  These programs reflect familiar Oprah themes, including self-help, personal empowerment, and spirituality.

As with the "Oprah Winfrey Show" and *O Magazine*, OWN programming includes Oprah Winfrey's interviews of celebrities (*id.* ¶ 83), some of which include "visits to the hometowns" of the celebrities.  (*Id.*)  Oprah Winfrey's activities are occasionally featured across her media platforms.  For example, in October 2011, "Oprah traveled to Fairfield, Iowa to meditate with 400 women at Maharishi University . . . ."  (*Id.* ¶ 81.)  The experience was covered in *O Magazine* in February 2012, and was the subject of a March 2012 episode of "Oprah's Next Chapter," an OWN television series.  (*Id.* ¶ 82.)

---

The Court may take judicial notice of the hyperlinks cited in this brief pursuant to Fed. R. Evid. 201.  *Auto-Owners Ins. Co. v. E.N.D. Servs., Inc.*, 506 F. App'x 920 (11th Cir. 2013) (judicial notice of information contained on websites regarding home inspection industry standards); *Lil' Joe Wein Music, Inc. v. Jackson*, 2006 WL 5428227 (S.D. Fla. Oct. 27, 2006) (judicial notice of newspaper articles reporting film subject to suit received wide commercial distribution), *aff'd*, 245 F. App'x 873 (11th Cir. 2007).  Courts may "take judicial notice at any stage of the proceeding," Fed. R. Evid. 201(d), including on motions to dismiss.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

**B.      Sunset's "Care Free TV" Concept**

Plaintiff claims that Kasi began developing "a concept for a television network called "Care Free TV" in 2003.  (*Id.* ¶ 8.)  Sunset broadly describes Care Free TV as involving: "transformative, experiential and therapeutic television programming" (*id.* ¶ 9); "footage of beautiful and inspiring places, guided imagery, meditation, music, art and philosophy" (*id.* ¶ 10); a "television network that 'enriches the mind and soothes the soul'" (*id.* ¶ 48); and "a perfect fit for Oprah Winfrey and her audience."  (*Id.* ¶ 13.)  Plaintiff contends that its proposal contained the following catchphrases:  "Your place for positive programming" (*id.* ¶ 48); "We take you there" (*id.* ¶ 51); and "celebrate life."  (*Id.* ¶ 52.)

Plaintiff also describes various programming ideas for Care Free TV, including: "vignettes or short segments" (*id.* ¶ 57); "Daydreams," admittedly premised on a recurring feature in *O Magazine* called "Breathing Space" (*id.* ¶¶ 58-59); "Cloud Scapes" and "Pet Time" (*id.* ¶ 67); "My Favorite Things" (*id.* ¶ 68);[2] "The Good News," and "short segments called 'Good News Breaks,'" to "air feel good news" (*id.* ¶ 73); "Birds Eye, which would feature aerial shots of major cities, beaches and natural settings" (*id.* ¶ 75); programming designed to "bring[] meditation to the masses" (*id.* ¶ 80); and "'My Hometown,' where cameras would follow celebrities on a visit back to the towns where they grew up to discuss their childhood, memories and life lessons learned."  (*Id.* ¶ 83.)

Kasi shopped her concept to Harpo Productions and the Oxygen Network, of which Sunset alleges "Oprah was a part owner."  (*Id.* ¶ 14.)  Both turned the project down.  (*Id.*)  Kasi

---

[2] "My Favorite Things" was an annual event on "The Oprah Winfrey Show," also featured in *O Magazine*, OWN, and Oprah.com.  *See, e.g.,* Oprah's Favorite Things Returns to TV in a Two-Hour Special on OWN, http://www.oprah.com/pressroom/Oprahs-Favorite-Things-Returns-to-Television/2 (last visited July 11, 2013).

went on to share her idea with other, unnamed "existing networks that could fit with her concept." (*Id.* ¶ 15.)

### C.      Pitch to Discovery and Formation of Confidentiality Agreement

In December 2006, Kasi, represented not only by an industry professional, Julie Stewart Jorgensen, but also by legal counsel (*id.* ¶¶ 16, 23), executed a confidentiality agreement with Discovery and subsequently emailed her pitch to Neville Meijers, an executive vice president at Discovery responsible for new media. (*Id.* ¶¶ 16-25.) A week later, Discovery told Kasi that it, too, was turning down her proposal. (*Id.* ¶ 26.)

The December 11, 2006 Confidentiality Agreement, attached to Plaintiff's Complaint, (Compl. ¶ 24, Ex. A), was not itself an agreement to use the idea, but was executed "to consider, review and evaluate a ***possible*** agreement between Discovery and [Sunset] for the development of a television network" before Kasi shared her pitch. (Compl. Ex. A) (emphasis added). Discovery promised to "keep all the Confidential Information in strict confidence for a period of ***one (1) year*** from the date of receipt . . . ." (*Id.*) (emphasis added). Sunset was required to "conspicuously mark" any written materials "confidential" "prior to disclosure" and "to provide written notice of the secrecy" of any verbal disclosures. (Compl. Ex. A).

The "obligation of non-disclosure" terminated when: (1) "the Confidential Information becomes known to the public or otherwise loses its status as confidential through no fault of Discovery"; (2) "the Confidential Information is disclosed by [Sunset] publicly or in some other way without any non-disclosure obligation"; (3) "a period of twelve (12) months passes from the disclosure"; or (4) "Discovery is required by law to disclose the Confidential Information . . . ."

The Agreement provided that Discovery "will not use any of [Sunset's] Confidential Information without the prior written consent of and the payment of compensation to [Sunset] . . . ." (Compl. ¶¶ 20-23.) The Agreement further stated that Sunset:

6

- "[A]cknowledges and agrees that Discovery currently may be developing services and products and may develop in the future services and products that *are similar to or even competitive* to [Sunset's] Confidential Information and other information that [Sunset] may disclose to Discovery," and

- "Nothing contained in this Agreement or otherwise shall limit Discovery['s] ability now or in the future to develop, acquire and otherwise exploit *similar or competitive* products and services, provided that Discovery is in compliance with its obligations under this Agreement."

(Compl. Ex. A) (emphasis added).

### D.     Second Pitch to Discovery

Even after Discovery rejected Sunset's proposal, Kasi persisted in trying to obtain an audience with other Discovery executives.  (Compl. ¶ 27.)  Plaintiff alleges that the proposal "reached the desk of Rita Mullin, then a senior vice president at Discovery" in August 2007.  (*Id.* ¶ 28.)  By Plaintiff's account, Mullin told Kasi to direct her communications to other Discovery employees, including Susan Campbell and Mary Beth Dale.  (*Id.* ¶¶ 34, 37).  Plaintiff claims that "several weeks" after her April 24, 2008 correspondence with Dale (*id.* ¶¶ 37-38), Dale "informed [Kasi] that the initial proposal had been misplaced," and Kasi forwarded an updated proposal.  (*Id.* ¶ 38.)  Plaintiff does not allege that Kasi executed a new Confidentiality Agreement with Discovery or otherwise designated the pitch information confidential before sending the updated proposal.  Kasi claims she continued to contact Discovery employees throughout the summer of 2008 and received no responses.  (Compl. ¶ 40.)  Thereafter, Mullin informed Kasi that Discovery had no interest in her Care Free TV concept.  (*Id.* ¶ 41.)

### III.     ARGUMENT

### A.     Plaintiff's Claims Are Time-Barred

Under Florida rules, statutes of limitations are substantive.  *See Fulton Cnty. Adm'r v. Sullivan*, 753 So. 2d 549, 553 (Fla. 1999); *Merkle v. Robinson*, 737 So. 2d 540 (Fla. 1999).  *Western Grp. Nurseries, Inc. v. Ergas*, 211 F. Supp. 2d 1362, 1366 (S.D. Fla. 2002).  Because

7

the Confidentiality Agreement contains no choice-of-law provision, this Court must apply Florida's choice-of-law rules to determine the applicable statute of limitations for Plaintiff's breach of contract claim. *Rando v. GEICO*, 556 F.3d 1173, 1176 (11th Cir. 2009).

"Florida has traditionally applied the lex loci contractus rule for choice of law determinations regarding issues of contract law." *Trumpet Vine*, 92 F.3d at 1119. Under this rule, the governing law concerning the validity and substantive obligations of contracts is the law of the place where the contract was made. *Id.* Here, either Florida (Plaintiff's principal place of business) or Maryland (Discovery's principal place of business) could apply. Under either state's law, however, Plaintiff's breach of contract claim is out of time.

Florida's statute of limitations for breach of contract claims is five years and Maryland's is three years. Fla. Stat. § 95.11(2)(b); Md. Code Ann., Cts. & Jud. Proc. § 5-101. Under Florida law, "actions for breach of contract are barred five years after the cause of action accrued regardless of whether the plaintiff knew that it had a claim." *Abecassis v. Eugene M. Cummings, P.C.*, 467 F. App'x 809, 812 (11th Cir. 2012); *see Potiker v. Gasiunasen Gallery*, 2010 WL 2949943, at *2 (S.D. Fla. July 26, 2010). Under Maryland law, the date of accrual begins when "the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury." *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 973 (Md. 2000); *see Bacon & Assocs. v. Rolly Tasker Sails (Thailand) Co.*, 841 A.2d 53 (Md. Ct. Spec. App. 2004) (applying discovery rule to breach of contract claims). Accordingly, under the discovery rule, the plaintiff must have notice of the wrong to start the running of the statutory period, which has been defined as express cognition or awareness implied from knowledge of circumstances. *Virtual Phys. Ctr. Rockville, LLC v. Phillips Med. Sys. N. Am., Inc.*, 478 F. Supp. 2d 840, 846 (D. Md. 2007).

8

Here, Plaintiff acknowledges that in January 2008, Discovery announced its joint venture with Harpo Productions to launch OWN.  (Compl. ¶ 33.)  OWN's mission was described in the launch press release as "to celebrate life, to inspire and entertain, empowering viewers around the world to live their best lives."  *See supra* note 1.  Plaintiff alleges that in February 2008, Kasi persisted in pitching Care Free TV as "a perfect fit for Oprah."  (Compl. ¶ 34.)  Although represented by counsel in her dealings with Discovery (*id.* ¶¶ 16, 23) and aware that Discovery planned to launch a network directed to Oprah Winfrey's audience as early as January 2008, Plaintiff not once notified Discovery of her alleged injuries until she filed this suit in June 2013 – more than five years later.  Under either Florida or Maryland law, therefore, Plaintiff's breach of contract claim is untimely and merits dismissal.  *See La Grasta v. First Union Secs., Inc.*, 358 F.3d 840, 845-46 (11th Cir. 2004) (holding that a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate "if it is 'apparent from the face of the complaint' that the claim is time-barred") (citation omitted). So too Plaintiff's related breach of implied covenant of good faith and fair dealing claim, which has the same limitations period.  *Brown v. Nationscredit Fin. Serv. Corp.*, 32 So.3d 661, 662 n.1 (Fla. Dist. Ct. App. 2010).  *See infra* at 13.

Moreover, Florida's statute of limitations for misappropriation of ideas claims is four years and Maryland's is three years.  Fla. Stat. § 95.11(3)(p); Md. Code Ann., Cts. & Jud. Proc. § 5-101.  Thus, Plaintiff's misappropriation of ideas claim is time-barred for any alleged misappropriation before June 2009, under Florida law, or June 2010, under Maryland law.  *See infra* at 15.

## B.    Sunset Fails to State Any Plausible Claim Against Discovery

Plaintiff's claims are not plausible on their face.  The purpose of Rule 12(b)(6) is to permit the Court to terminate lawsuits such as this one, that are fatally flawed in their legal premises to spare the litigants the burdens of unnecessary pretrial and trial activity.  *Ackerman v.*

*Moreland*, 2012 WL 1059798, at *4 (M.D. Fla. Mar. 28, 2012) (citing *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157 (8th Cir. 1993)).  Although the Court must take the facts alleged in the light most favorable to Plaintiff and accept well-pleaded factual allegations as true, it need not accept "[l]egal conclusions without adequate factual support." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

"A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Importantly, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* To survive a Rule 12(b)(6) motion, a plaintiff must set forth "a claim to relief that is plausible on its face," *id.* at 570, which the Court held in *Ashcroft v. Iqbal* only exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009).

Here, Sunset's Complaint contains a litany of labels, conclusory allegations, and "naked assertions" that the Court need not – and should not – consider. *Id.* Sunset claims that Discovery breached the parties' Confidentiality Agreement, but cannot plausibly assert such a claim where the explicit terms of the contract attached to the Complaint limit its enforceability to a one-year term.  Similarly, Plaintiff cannot plausibly contend that Discovery misappropriated Sunset's ideas where the concept, themes, and television programs Sunset claims ownership of – for example, "positive programming" that "enriches the mind and soothes the soul" (Compl. ¶ 48), "respect[s] viewers" and "promot[es] conscious living" (*id.* ¶ 53), and includes a mix of "art" and "philosophy" (*id.* ¶¶ 55-56) – are either so generic as to be public domain or are

premised, by Plaintiff's own admission, in large part on pre-existing ideas and content created by Oprah Winfrey's multi-media platforms.  (*See, e.g., id.* ¶ 59.)

Courts regularly dismiss theft-of-ideas claims, such as Plaintiff's, on pre-discovery motions to dismiss.[3]  "Because the plaintif[f] [has] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.  "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.  "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Here, "judicial experience and common sense" confirm that concepts like "positive programming" are not, on their face, novel or "unique ideas" as to which Sunset can claim exclusive authorship or ownership.  (Compl. ¶ 89.)

### C.    The Complaint Fails to State a Claim for Breach of Contract

Even if Plaintiff's breach of contract claim were not time-barred – which it is – the claim also fails as a matter of law.  As a threshold matter, whether Florida or Maryland law applies to the merits of Plaintiff's breach of contract claim is of no consequence.  The causes of action in each state are nearly identical and, under either state's law, Plaintiff's claim should be dismissed.[4]  *See Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1234 (11th Cir. 1995)

---

[3] *See, e.g., Broughel v. Battery Conservancy*, 2010 WL 1028171 (S.D.N.Y. Mar. 16, 2010) (denying request to amend complaint where misappropriation of idea claim would not survive motion to dismiss because plaintiff did not sufficiently allege novelty); *Riordan v. H.J. Heinz Co.*, 2009 WL 4782155 (W.D. Pa. Dec. 8, 2009) (granting motion to dismiss misappropriation of idea claim); *Vent v. Mars Snackfood US, LLC*, 611 F. Supp. 2d 333 (S.D.N.Y.) (applying New Jersey law, granting motion to dismiss theft of idea case, and denying discovery on issue of novelty), *aff'd*, 350 F. App'x 533 (2d Cir. 2009).

[4] Under Maryland law, "the elements of a breach of contract are 1) a contractual obligation and 2) a material breach of that obligation."  *Taylor v. NationsBank, N.A.*, 776 A.2d 645 (Md. 2001); *Capitol Radiology, LLC v. Sandy Spring Bank*, 439 F. App'x 222 (4th Cir. 2011) (citing *id.*). Under Florida law, a plaintiff must assert the existence of a contract, a breach of such contract,

("[W]hen the laws of the competing states are substantially similar, the court should avoid the conflicts question and simply decide the issue under the law of each of the interested states.").

First, Plaintiff assumes, incorrectly, that Discovery was precluded from developing any network or television programming that remotely resembles Sunset's Care Free TV concept without compensating Sunset. To the contrary, the Agreement expressly provides an exception for "services and products" that Discovery "may be developing" or "may develop in the future" that are "similar or even competitive to [Sunset's] Confidential Information . . . ." (*See* Compl. Ex. A.) On this point, *Myerburg v. Medtronic, Inc.*, 2004 WL 5622263, at *7 (S.D. Fla. Sept. 28, 2004) is instructive. There, Judge Cooke found that a medical device developer did not breach its confidentiality with a doctor who developed a marketing strategy for defibrillators where the parties' agreement "provided an exception for information independently acquired by Defendant or already known by Defendant." Indeed, Judge Cooke noted that, where the defendant could demonstrate that the allegedly "novel" idea was "so ripe, that it was in existence at one of [the developer's] competitors in that same period," the idea was sufficiently "in the public domain" and could not form the basis of a claim for misappropriation or breach of the parties' confidentiality agreement. *Id.* (quoting *Garrido v. Burger King Corp.*, 558 So. 2d 79, 84 (Fla. Dist. Ct. App. 1990)). As in *Myerburg*, the Agreement here expressly acknowledges that Discovery "may develop" "similar" or "competitive" programming. Moreover, as discussed *infra* at 15, on its face, Plaintiff's concept is hardly "novel" and reflects ideas that are pervasive

---

and damages resulting from such breach. *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1365 (M.D. Fla. 2007) (citing *Knowles v. C.I.T. Corp.*, 346 So. 2d 1042, 1043 (Fla. Dist. Ct. App. 1977)). *See generally Singer v. AT&T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1998) (observing that "[a] breach of contract [claim] . . . [is a] universally recognized cause[] of action that [is] materially the same throughout the United States"); *Am. Airlines v. Wolens*, 513 U.S. 219, 233 n.8 (1995) (noting that "contract law is not at its core 'diverse, nonuniform and confusing'") (citation omitted).

in the television industry and certainly "in the public domain," thus precluding Plaintiff's breach of contract and related misappropriation claims.

Second, the Confidentiality Agreement does not impose obligations on Discovery in perpetuity.  The term of the Agreement was *one year*, and it expired.  (*See* Compl. Ex. A.)  The parties executed the Agreement on December 11, 2006.  (*Id.* ¶ 24, Ex. A.)  According to the Complaint, "[a]fter the confidentiality agreement was executed, Kasi mailed a detailed copy of her pitch . . . to Meijers."  (*Id.* ¶ 25.)  The parties' Agreement expired on or about December 2007.  Plaintiff claims she forwarded updated pitch materials to Discovery in the spring of 2008, but does not allege that the parties executed a new Confidentiality Agreement for those documents (or that they were marked "Confidential").  (*Id.* ¶¶ 37-38.)  Given the expiration of the Agreement after one year, in December 2007, any alleged use of Plaintiff's ideas after that period falls outside the terms of the contract and Sunset can only look to its separate misappropriation claim (*id.* ¶¶ 103-107), which likewise fails to state a claim.  *See infra* at 15.

### D.    The Complaint Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Under both Florida and Maryland law, Plaintiff's claim for breach of the duty of good faith and fair dealing fails.  As a threshold matter, "no independent cause of action exists in Maryland for breach of the duty of good faith and fair dealing."  *Tillery v. Borden*, 2010 WL 3517015, at *10 (D. Md. Sept. 3, 2010) (citing *Mount Vernon Props. v. Branch Banking & Trust Co.*, 907 A.2d 373, 375, 381-82 (Md. Ct. Spec. App. 2006).  Instead, in Maryland, "[a] breach of the implied duty of good faith and fair dealing is better viewed as an element of another cause of action at law, *e.g.*, breach of contract, than as a stand-alone cause of action for money damages."  *Mount Vernon Props.*, 907 A.2d at 381-82; *see also Swedish Civil Aviation Admin.*, 190 F. Supp. 2d at 793-94.  Thus, should this Court determine that Maryland law applies to Plaintiff's second

13

claim – and it need not even reach that question – Plaintiff's claim is not a "separate" cause of action under Maryland law and must be dismissed as duplicative of the breach of contract claim.

The outcome is no different under Florida law because the Confidentiality Agreement is explicit and controlling and precludes any separate claim for breach of the implied covenant of good faith and fair dealing. *See Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir. 2001); *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1437-38 (S.D. Fla. 1996); *County of Brevard v. Miorelli Eng'g, Inc.*, 703 So. 2d 1049, 1050 (Fla. 1997). The purpose of the implied covenant is to protect "the reasonable expectations of the contracting parties in light of their express agreement." *Barnes*, 932 F. Supp. at 1438. The rights conferred by the covenant are unequivocally limited. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999). The covenant "'is not an abstract and independent term of a contract,'" thus, Plaintiff cannot bring a cause of action based on the covenant: (1) in the absence of breach of an express term of the contract; (2) to override or vary the terms of the contract; or (3) where the allegations underlying the claim for breach of the covenant are duplicative of those which support the claim for breach of contract. *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1235 (Fla. Dist. Ct. App. 2001) (quoting *Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc.*, 710 So. 2d 753, 575 (Fla. Dist. Ct. App. 1998)); *Weaver*, 169 F.3d at 1318.

Here, there is no breach of contract, so there can be no breach of the implied covenant. *See supra* at 11. Plaintiff's implied covenant claim also fails because it is an attempt to override the express terms of the Agreement – such as the explicit one-year term. Because Sunset's allegations in support of its implied covenant claim are duplicative of its support for its breach of contract claim, and there is no breach of contract, there is no breach of the implied covenant.

Insofar as the covenant has been recognized as an "interpreting, gap-filling tool," where,

14

as here, the propriety of Discovery's conduct is resolved by the express terms of the contract, no gap-filler is needed. *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000). The need for a gap-filler arises when "the contract is ambiguous about the permissibility of conduct," or "the conduct is undertaken pursuant to a grant of discretion and the scope of that discretion has not been designated." *Id.* In this case, Sunset does not and cannot allege that the parties' Agreement is ambiguous. Nor does Sunset allege, nor can it allege, that Discovery acted pursuant to a grant of discretion necessitating the gap-filling tool of an implied covenant. Thus, because no "interpreting, gap-filling" tool is needed to interpret or enforce the Agreement, Plaintiff's second claim must be dismissed as a matter of law.

### E.     The Complaint Fails to State a Claim for Misappropriation of Ideas

As with its contract claims, Plaintiff's claim for misappropriation of ideas – whether for use before or after expiration of the one–year term of the Confidentiality Agreement – is not only time barred (*see supra* at 9), but also fails to state a claim. Under Florida law, to establish a cause of action for misappropriation of an idea, the plaintiff must show that: (a) the idea was novel; (b) disclosure of the idea was made in confidence; and (c) that the idea was adopted and used by the defendant. *Alevizos v. John D. & Catherine T. MacArthur Found.*, 764 So. 2d 8, 11 (Fla. Dist. Ct. App. 1999); *Garrido*, 558 So. 2d at 83; *Jaggon v. Rebel Rock Entm't, Inc.*, 2010 WL 3468101, at *2 (S.D. Fla. Sept. 1, 2010).[5] Plaintiff has not and cannot plausibly plead a claim for misappropriation.

---

[5] Florida has expressly adopted the well-established body of law in New York in interpreting and applying this tort. *Alevizos*, 764 So. 2d at 11. While there is little Maryland law involving idea submission cases, there is little doubt that Maryland courts would also follow New York and other jurisdictions that hold that novelty is a requirement for such claims. *See Fischer v. Viacom Int'l, Inc.*, 115 F. Supp. 2d 535, 540-41 (D. Md. 2000) (applying New York law in an idea submission case). Accordingly, cases interpreting New York law are persuasive authority in this case.

First, Sunset has not pled – and cannot plausibly plead – that its ideas were novel.  The concept of television programming focusing on positive messaging, therapeutic ideas, and engaging the audience in spiritual topics is hardly novel.  Numerous cable networks regularly air similar programming.[6]  Plaintiff's assumption that any television network or program "providing transformative, experiential and therapeutic television programming" must have originated solely from and is owned exclusively by Plaintiff is patently unjustified.  Likewise, the "catch phrases" that Plaintiff claims as Sunset's novel product are common.  For example, the phrase "we take you there," reminiscent of the 1970s hit song "I'll Take You There," is used in a variety of media.[7]  Media or products promising to "enrich the mind" and "soothe the soul" are prevalent – a simple Internet search for those terms together turns up over 12,600,000 hits.  And the notion of providing "positive programming" is used throughout multimedia.[8]

Sunset's Care Free TV "concept" and "catch phrases" lack novelty because they consist of generalized ideas that are either common in the industry or merely variations on a basic theme.  *Ed Graham Prods., Inc. v. Nat'l Broad. Co.*, 347 N.Y.S.2d 766, 769 (N.Y. Sup. Ct.

---

[6] *See, e.g.*, Trinity Broadcasting Network, http://tbn.org (last visited July 11, 2013) (advertising "inspirational" programming); UPTV, http://www.uptv.com (last visited July 11, 2013) (focusing on "uplifting and faith-friendly entertainment"); BET Gospel, http://www.bet.com (last visited July 11, 2013) (providing gospel and inspirational programming).

[7] *See, e.g.*, Honolulu Star Advertiser "We Take You There" Advertisement, http://www.youtube.com/watch?v=0Ym22XQ1WAM (last visited July 11, 2013); National Geographic Channel, http://channel.nationalgeographic.com/channel/the-places-we-take-you (last visited July 11, 2013); Garmin, http://www8.garmin.com/wheretobuy/wheretobuy.htm (last visited July 11, 2013); Take You There Travel, http://www.take-you-there-travel.com (last visited July 11, 2013).

[8] *See, e.g.*, ASPiRE, http://www.aspire.tv/about (last visited July 11, 2013) (television network providing "enlightening, entertaining and positive programming to African-American families with a diverse slate including . . . faith and inspirational programs"); In View Series Hosted By Larry King, http://www.inviewseries.com/blog/2013/05/the-in-view-series-offers-positive-programming (last viewed July 11, 2013) (promoting television series with "positive programming"); Green T with Tamara, http://greentwithtamara.com (last viewed July 11, 2013) (award-winning web series advertising "Enlightened Entertainment," "Transformational Television," and "Positive Programming").

1973) (holding "larger-than-life heroes with juvenile helpers fighting evildoers and embarking on all sorts of fantastic adventures" are a staple of comic adventure books and not sufficiently novel).  Such generic ideas, unlike copyrightable expression, "are in the public domain and may freely be used by anybody with impunity." *Id.*

      Moreover, Plaintiff's programming ideas for Care Free TV were admittedly based on pre-existing ideas from Oprah Winfrey's multi-media platforms.  Plaintiff cannot plausibly allege that its programming ideas were somehow novel because they combined ideas from Oprah Winfrey's brand with a new television format, or because they were conceived to unite "experiential and therapeutic television programming."  (Compl. ¶ 9.)  Even where several concepts are combined for the first time, if the component parts were known to the general public or the defendant, the combination is not novel.  *Oasis Music, Inc. v. 900 U.S.A., Inc.*, 614 N.Y.S.2d 878, 883 (N.Y. Sup. Ct. 1994).  Likewise, adaptations must "show genuine novelty and invention, and not a merely clever or useful adaption of existing knowledge."  *Educ. Sales Programs, Inc. v. Dreyfus Corp.*, 317 N.Y.S.2d 840, 844 (N.Y. Sup. Ct. 1970).  Thus, a New York court rejected an idea misappropriation claim involving an interactive telephone game, citing a lack of novelty.  *Oasis Music*, 614 N.Y.S.2d at 883.  The court noted that such games already were in the public domain, even though they took the form of trivia games and not the type proposed by plaintiff.  The court also found the game's "antidrug/anti-crime" theme was not novel since such themes "are constantly present in the media."  *Id.*  "The mere fact that an antidrug/anti-crime theme may not have been a part of the telephone interactive games prior to the plaintiff's proposal does not necessarily mean that such an idea is itself novel."  *Id.*

      *Murray v. National Broadcasting Co.*, 671 F. Supp. 236 (S.D.N.Y. 1987), *aff'd*, 844 F.2d 988 (2d Cir. 1988), is particularly instructive.  In that case, the plaintiff sued NBC and claimed

that his idea for a situation comedy had been misappropriated by the creators of "The Cosby Show." Both the trial and appellate courts concluded that the plaintiff's idea for a situation comedy, similar to "Father Knows Best" and "The Dick Van Dyke Show," but focusing on a black, middle-class family in non-stereotypical roles, was a mere "adaptation of existing knowledge" and of "known ingredients," and thereby lacked "genuine novelty and invention." 844 F.2d at 992 (quoting *Educ. Sales*, 317 N.Y.S.2d at 844). The Second Circuit emphasized that "lack of novelty in an idea is fatal to ***any*** cause of action for its unlawful use." *Id.* at 991.

Where, as here, an idea is "so unoriginal or lacking in novelty that its obviousness bespeaks widespread and public knowledge of the idea," dismissal is proper. *Nadel v. Play-By-Play Toys & Novelties*, 208 F.3d 368, 378 (2d Cir. 2000); *see also Downey v. Gen. Foods Corp.*, 31 N.Y.2d 56, 61 (1972) ("Lack of novelty in an idea is fatal to any cause of action for unauthorized use."). *See* 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright (2008), § 19D.06[B][3] ("[The] novelty requirement performs an important function in connection with proving whether the idea actually used by defendant was the idea submitted by plaintiff rather than an independently conceived idea or one obtained from another source.").

These policies apply with particular force here. Sunset contends that it is entitled to a substantial monetary judgment for a television network idea that incorporates well-known, pre-existing elements – positive programming focusing on self-help and therapeutic themes, featuring audience participation and celebrity profiles. These concepts, whether separate or combined, are not remotely novel where their "obviousness bespeaks widespread and public knowledge of the idea." *Nadel*, 208 F.3d at 378. Particularly ironic here, Oprah Winfrey has employed them in her multi-media platforms for decades – which Sunset admittedly combed for inspiration.

18

Even the notion of creating a TV network directed to Oprah Winfrey's audience has been done before, as Plaintiff acknowledges, with the creation of the Oxygen cable network. Entire television network concepts or blocks of programming have been rejected for lacking novelty. In *McGhan v. Ebersol*, 608 F. Supp. 277 (S.D.N.Y. 1985), for example, the plaintiff claimed that the defendant had misappropriated his idea for "Friday Night Videos," a music video show broadcast over the NBC television network. In granting summary judgment in favor of the defendant network, the court found that the plaintiff was "unable to point to any specific component . . . that did not have its origin either in MTV or in the industry in general." *Id.* at 287. *See also Marraccini v. Bertelsmann Music Grp., Inc.*, 221 A.D.2d 95 (N.Y. App. Div. 1996) (concept for music video cable network, with home shopping, not a novel and original idea). Accordingly, Plaintiff's misappropriation of ideas claim fails for lack of novelty.

Nor does Plaintiff allege the second prong of the misappropriation of idea claim – that the disclosure was made in confidence. Even if Sunset disclosed a novel idea to Defendant that it later used – which Discovery adamantly denies – any confidence Discovery promised to Sunset expired after the one year term of the Agreement. *See supra* at 11. Moreover, where, as here, the purportedly misappropriated idea lacks novelty, there can be no "disclosure in confidence." "Nothing is bestowed if the facts of a 'secret' imparted in confidence are already the subject of general knowledge." *Educ. Sales*, 317 N.Y.S. 2d at 843. This is particularly relevant here, because most – if not all – of Sunset's ideas are premised on Oprah Winfrey's pre-existing multi-media content, which, of course, was publicly available long before Kasi ever began drafting her Care Free TV pitch and certainly did not belong to her.

Finally, Plaintiff cannot plausibly plead that Discovery adopted and used Sunset's ideas. Understandably, people who have an idea for a television program or network believe that they

are the only ones who have thought of the idea, even though often the same ideas – particularly ones as generic as these – are repeatedly circulated throughout the entertainment industry. Indeed, the Confidentiality Agreement anticipates just such an eventuality, that programs and ideas generated by Discovery's employees or outside sources may resemble other independent submissions.  (Compl. Ex. A.)

## IV.   CONCLUSION

For the foregoing reasons, Discovery respectfully requests that this Court enter an Order granting Defendant Discovery Communications, Inc.'s Motion and dismissing this case with prejudice for failure to state any claim upon which relief may be granted.

Dated:  July 12, 2013

Respectfully submitted,

**CARLTON FIELDS, P.A.**

/s/ Charles M. Rosenberg
Charles M. Rosenberg
  Florida Bar No. 279064
  crosenberg@carltonfields.com
Naomi M. Berry
  Florida Bar No. 0069916
  nberry@carltonfields.com
100 S.E. Second Street, Suite 4200
Miami, FL  33131
Tel.: (305) 530-0050
Fax: (305) 530-0055

**DAVIS WRIGHT TREMAINE LLP**

/s/ Laura R. Handman
Laura R. Handman (*pro hac* pending)
  laurahandman@dwt.com
Constance M. Pendleton (*pro hac* pending)
  conniependleton@dwt.com
Lisa B. Zycherman (*pro hac* pending)
  lisazycherman@dwt.com
1919 Pennsylvania Ave., N.W., Suite 800
Washington, DC  20006
Tel.: (202) 973-4200
Fax: (202) 973-4499

*Counsel for Defendant Discovery Communications, Inc.*

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 12th day of July 2013, true and correct copies of the foregoing Defendant Discovery Communications Inc.'s Motion to Dismiss Complaint and Memorandum in Support were served via ECF upon all counsel of record.


*/s/ Charles M. Rosenberg*